UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-11843-RGS

GREGORY CAIZZI,

v.

DHL EXPRESS (USA), INC.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

February 16, 2023

STEARNS, D.J.

Gregory Caizzi brings this lawsuit against his former employer, DHL Express (USA), Inc. (DHL), alleging that it violated his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*,[1] when it terminated him for failing to report to work on several Sundays in July and August of 2020. DHL moves for summary judgment on all claims pursuant to Fed. R. Civ. P. 56(c). For the following reasons, the court will allow the motion in part and deny it in part.

---

[1] Caizzi also pled a claim of disability discrimination in violation of Mass. Gen. Laws ch. 151B. *See* Compl. (Dkt # 1-1) ¶¶ 27-31. However, he does not oppose the entry of summary judgment as to this claim. *See* Mem. in Opp'n to Mot. for Summ. J. (Dkt # 27) at 2. The court accordingly allows as unopposed the portion of DHL's motion seeking summary judgment on Caizzi's disability discrimination claim.

## BACKGROUND

The essential facts, viewed in the light most favorable to Caizzi as the non-moving party, are as follows. DHL, a global logistics and international shipping company, hired Caizzi as a part-time dock worker in December of 2016. By the summer of 2018, Caizzi had transitioned to a role as a full-time courier in the Boston office. His duties included delivering packages to residents in the greater Boston area and picking up outbound packages from customers.

As a courier in the Boston office, Caizzi was represented by the International Brotherhood of Teamsters, Local 25 (the Union). DHL's collective bargaining agreement with the Union entitled employees located in New England to just one warning prior to discharge, although in practice DHL employed a three-tier disciplinary system: a formal warning for a first absence, suspension for a second absence, and termination for a third absence.

### a. FMLA Leave

In the fall of 2018, Caizzi applied for intermittent FMLA leave. After obtaining certification from Caizzi's health care provider regarding his medical condition and need for leave, DHL's third-party leave administrator, Sedgwick, granted Caizzi up to four full-day absences per month for his

condition and up to six 2-hour absences per month for treatment between October 1, 2018 through April 1, 2019.

Over the course of the next two years, Caizzi applied to extend his intermittent FMLA leave several times. Each time, he was asked to recertify his medical need for leave by a certain date. On several occasions, Caizzi returned the certification within the time limits prescribed by Sedgwick. When he did so, he was always granted leave in accordance with the certification. When he failed to provide the requested certification and allowed his leave to lapse, however, Sedgwick required him to file a new request for leave, providing a new medical certification in the process.

In June of 2020, Caizzi submitted another request to extend his intermittent FMLA leave, which was set to expire on June 24, 2020. On June 12, 2020, Sedgwick acknowledged the request and asked Caizzi to return an updated certification recertifying his medical need for leave by July 13, 2020. Caizzi failed to meet this deadline, causing Sedgwick to deny his extension request on July 14, 2020.

A week later, Caizzi filed a new request for intermittent FMLA leave, seeking approval effective July 14, 2020. Sedgwick again acknowledged the request and asked for a medical certification recertifying Caizzi's need for leave. On August 10, 2020, having received the requisite certification,

Sedgwick approved Caizzi for one full-day absence per month for his condition and one 1-hour absence per week for treatment between July 14, 2020 through January 12, 2021.

### b. Sunday Work

In the spring and summer of 2020, as a result of the global pandemic, DHL experienced a dramatic increase in the volume of packages it handled. By June of 2020, the increase was so significant that the Boston office began operating seven days a week to manage demand. Initially, the manager of the Boston office, Anthony Baglio, sought volunteers to work Saturday and Sunday shifts. By the end of the month, however, he was unable to sufficiently staff Sunday shifts using only volunteers. To remedy the short staffing, Baglio began requiring couriers to work Sunday shifts by reverse seniority, as provided in the collective bargaining agreement.[2]

Caizzi was one of the couriers assigned to work Sunday shifts. As relevant here, DHL scheduled Caizzi to work on the following Sundays in the summer of 2020: July 5, July 19, July 26, August 2, August 9, and August 16.

---

[2] Although the Union disputed whether the collective bargaining agreement permitted DHL to mandate Sunday work and advised its members that they need not report on Sundays, the Union lost this argument during the grievance and arbitration process. The arbitrator's adverse ruling is not before the court.

Caizzi did not report for work on at least four of these dates (July 5, July 19, July 26, and August 2).[3]

Caizzi maintains that only his July 5 absence was unexcused. He contends that he requested sick leave for his July 19 absence and FMLA leave for his July 26 and August 2 absences. There is evidence that his FMLA leave requests, at least, were granted. On August 10, 2020, Sedgwick retroactively approved Caizzi to use FMLA leave on July 26 and August 2, even though it concurrently approved Caizzi to use FMLA leave on July 20 (which meant Caizzi exceeded his allotment of FMLA leave during the month of July).

DHL issued disciplinary letters to more than fifty employees who failed to report for their scheduled Sunday shifts during this period. Although DHL appears to have drafted contemporaneous disciplinary letters for Caizzi for his absences on July 19, July 26, and August 2 (as well as for alleged absences on August 9 and August 16), Caizzi attests that he did not receive any of these notices. He states that he only received one disciplinary letter and that it was first shown to him several weeks later, in September of 2020. He also indicates that he did not receive a termination letter until November of 2020.

---

[3] The parties dispute whether Caizzi reported for work on August 9 or August 16. Because Caizzi offers sufficient evidence for a jury to resolve this factual dispute in his favor (the lack of any marked absence on Baglio's calendar, for example), the court assumes for the purposes of this motion that Caizzi did report for work on those days.

The Union filed a grievance on behalf of all affected employees disputing the issuance of disciplinary letters for the failure to work Sunday shifts. The arbitrator ruled against the Union, determining that DHL had not violated the terms of the collective bargaining agreement by "forc[ing] employees to work on Sundays (unscheduled day) under the threat of discipline." October 28, 2020 Arbitration Decision (Dkt # 24-6) at 1. Four days later, on November 2, 2020, DHL issued termination notices to twenty-five employees who had missed at least three Sunday shifts, including Caizzi. After his attempt to file a new grievance was dismissed as untimely,[4] Caizzi filed a suit in state court, asserting claims for disability discrimination and FMLA interference and retaliation. DHL removed the case to this court and, discovery having closed, now moves for summary judgment on all claims.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence

---

[4] Caizzi sought to challenge whether there was just cause for his termination. Because the arbitrator found the issue of whether DHL complied with its three-step disciplinary protocol in discharging Caizzi untimely, it is not presently before the court.

6

of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### a. Retaliation

To make out a claim for retaliation under the FMLA, a plaintiff "must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Chase v. U.S. Postal Serv.*, 843 F.3d 553, 558 (1st Cir. 2016), quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998).

DHL contends that Caizzi cannot establish the requisite causal link.[5] Because Caizzi had two absences that indisputably cannot be tied to the exercise of FMLA rights – July 5 (on which date he was not approved for

---

[5] The court will not apply the usual three-step burden-shifting framework because, assuming the jury resolves all factual disputes in Caizzi's favor, Caizzi alleges direct evidence of retaliation. His termination notice explicitly refers to absences allegedly covered by FMLA leave.

FMLA leave) and July 19 (for which date he concedes he did not request FMLA leave) – the question becomes whether Caizzi can establish that the third absence upon which DHL relied necessarily implicated his FMLA rights. In the court's view, Caizzi has adduced sufficient evidence that would permit a reasonable juror to find in his favor. Other than July 5 and July 19, the absences warranting termination cited by DHL are July 26, August 2, August 9, and August 16. There is a genuine dispute of material fact as to whether Caizzi reported for work on August 9 and August 16 – Caizzi maintains that he was in both days, and Baglio's calendar arguably supports his testimony. *See* Baglio Calendar (Dkt # 29-2). If the jury resolves the factual dispute in Caizzi's favor, either July 26 or August 2 must be the third absence underlying Caizzi's termination. Because Caizzi offers evidence that Sedgwick approved his use of FMLA leave on both days,[6] *see* November 4,

---

[6] DHL correctly notes that Caizzi exceeded his allotment of FMLA leave in July of 2020. Mem. in Supp. of Mot. for Summary J. (Dkt # 21) at 18. But there is evidence to suggest that Sedgwick nonetheless approved Caizzi's use of FMLA leave on July 26. And even if this approval is not controlling, it is not clear whether DHL provided Caizzi with sufficient opportunity to support the need for additional days of leave (e.g., by obtaining an updated medical certification). *Cf. Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 494 (7th Cir. 2014), *as corrected* (Nov. 2, 2015). Caizzi maintains that he never received the disciplinary letters associated with his July 26 and August 2 absences. Accepting his testimony as true, his first opportunity to learn that he was denied leave would have been over a month later, in September of 2020.

2020 Email from Sedgwick (Dkt # 29-10), a reasonable juror could find that Caizzi would not have been terminated but for his use of FMLA leave.

### b. Interference

To make out a claim for FMLA interference, "plaintiff must show that (1) [he] was eligible for the FMLA's protections; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to leave under the FMLA; (4) [he] gave [his] employer notice of [his] intention to take leave; and (5) [his] employer denied [him] FMLA benefits to which [he] was entitled." *Chacon v. Brigham & Women's Hosp.*, 99 F. Supp. 3d 207, 213 (D. Mass. 2015), citing *Carrero–Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 722 n. 8 (1st Cir. 2014). In setting out a claim of interference, a plaintiff need only show "entitlement to the disputed leave; no showing as to employer intent is required." *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331 (1st Cir. 2005).

DHL argues that Caizzi cannot show it "ever denied him any approved FMLA leave" because Caizzi was "properly disciplined" for each absence during July and August of 2020. Mem. in Supp. of Mot. for Summary J. at 13. But whether Caizzi was properly disciplined is a disputed fact. Caizzi offers evidence that Sedgwick approved his use of FMLA leave on at least two of the Sundays for which he was disciplined: July 26 and August 2. *See*

November 4, 2020 Email from Sedgwick. A reasonable juror could find that the issuance of discipline for these absences (or, at the very least, the failure to rescind the discipline after Caizzi was retroactively approved for FMLA leave) denied Caizzi a benefit to which he was entitled.

To the extent a showing of prejudice is required, the court cannot say that Caizzi fails to establish a genuine dispute of material fact. As noted above, Caizzi has offered evidence that could support a jury finding that the third absence underlying his dismissal was tied to use his of FMLA leave. And a reasonable jury might well find it unfair to charge Caizzi with the consequences of a mistaken calculation made by his employer in computing his eligible days of FMLA leave. It would thus be inappropriate to enter judgment in DHL's favor on this claim.

## ORDER

For the foregoing reasons, the motion for summary judgment is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>. The court enters judgment against Caizzi on his disability discrimination claim. Caizzi's FMLA interference and retaliation claims, however, survive this motion, and the clerk will schedule them for trial.

SO ORDERED.

<u>Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE